Filed 12/13/23  In re Alaina W. CA4/2
*See concurring and dissenting opinions.*


**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**


**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| In re ALAINA W., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E081041 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2100206) |
| v. | OPINION |
| ANDREW W., | |
| Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County.  Donal B. Donnelly, Judge.  (Retired judge of the Imperial Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Conditionally reversed and remanded with directions.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.


1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

Andrew W. (Father) appeals from the juvenile court's order appointing a legal guardian for his daughter and terminating dependency jurisdiction. He argues that the court and the Riverside County Department of Public Social Services (DPSS) failed to comply with state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We agree and conditionally reverse and remand.

BACKGROUND

In February 2021, the Lake County Sheriff's Department requested that the Lake County Department of Social Services (Lake County DSS) pick up seven-year-old Alaina W. and her 10-year-old half brother. The children were at the hospital. Brandy S. (Mother) had been arrested for assaulting another person's child, and there was no appropriate caregiver for Alaina and her half brother. The social worker took temporary custody of the children and placed them in a foster home.

When the social worker spoke to the parents, Mother admitted being under the influence of a controlled substance. Father said that he had recently used methamphetamine and declined to drug test, stating that he would test positive. Mother and Father both told the social worker that they did not have any Indian ancestry.[1]

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

Lake County DSS filed a petition alleging that Alaina fell within subdivision (b)(1) of Welfare and Institutions Code section 300. (Unlabeled statutory citations refer to this code.) At the detention hearing, the juvenile court asked the parents about Indian ancestry. Both again denied any such ancestry. The court detained Alaina from the parents.

At the jurisdiction hearing, the juvenile court found true allegations that Mother (1) had a history of abusing substances, (2) had untreated mental health issues, and (3) was homeless and failed to arrange adequate care and shelter for Alaina. As to Father, the court found true allegations that he (1) had an untreated substance abuse problem and (2) failed to protect Alaina from Mother's substance abuse. The court took jurisdiction over Alaina on the basis of those sustained allegations.

The court granted Lake County DSS's request to transfer the case to Riverside County. Father lived in Riverside County with his parents, and Mother had moved in with him.

In preparation for the disposition hearing, DPSS spoke with the paternal grandmother about Alaina's placement. At the disposition hearing, the juvenile court declared Alaina a dependent of the court, removed her from the parents' custody, and ordered reunification services for both parents. Father indicated that he wanted DPSS to assess the paternal grandparents and a paternal uncle for placement. He had contact information for the paternal grandparents and said that they would have the paternal uncle's phone number.

3

The court terminated reunification services for both parents at the 12-month review hearing and set the matter for a section 366.26 hearing. At the section 366.26 hearing, the court adopted DPSS's recommended finding that the agency had conducted a sufficient ICWA inquiry and that ICWA did not apply to Alaina. The court found that termination of parental rights would be detrimental to Alaina under section 366.26, subdivision (c)(1)(B)(iv) (child living with foster parent who is unable or unwilling to adopt child but who is willing and capable of providing a stable and permanent environment, and removal from foster parent's custody would be detrimental to child's emotional well-being). The court selected legal guardianship as Alaina's permanent plan, appointed Alaina's foster mother the child's legal guardian (§ 366.26, subd. (b)(5)), and terminated dependency jurisdiction.

## DISCUSSION

### I. *Notice of Appeal*

As a threshold matter, DPSS argues that we should affirm because Father's notice of appeal does not state that he is appealing from the guardianship order. The argument lacks merit.

We liberally construe notices of appeal "'so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.'" (*In re Joshua S.* (2007) 41 Cal.4th 261, 272; accord Cal. Rules of Court, rule 8.100(a)(2).)

Father's notice of appeal states that he is appealing from an order under section 366.26, and the notice correctly identifies the date of the section 366.26 hearing. Instead

of checking the box indicating that the order appointed a legal guardian, Father erroneously checked the box indicating that the order terminated parental rights. But it is clear that Father is not appealing from an order terminating parental rights. The court declined to terminate parental rights. Moreover, it is reasonably clear that Father is appealing from the guardianship order, given that he correctly identified the statutory authority for the guardianship order and the date of the hearing at which the court made the order. And DPSS does not identify any way in which it was misled or prejudiced by the notice of appeal. Nor do we see how it possibly could have been misled or prejudiced. The notice of appeal therefore was sufficient to give us jurisdiction to review the guardianship order. (*In re Joshua S.*, *supra*, 41 Cal.4th at p. 272.)

## II. *ICWA Error*

Father argues that DPSS prejudicially erred by failing to ask extended family members (the paternal grandparents and paternal uncle) about Alaina's potential Indian ancestry. We agree.

The child welfare department and the juvenile court have an "'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.'" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), quoting § 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*Ibid.*)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The child welfare department's "duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child

5

abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) In addition, "[f]ederal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).)" (*Ricky R.*, at pp. 678-679.) Similarly, "[s]tate law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).)" (*Id.* at p. 679.)

In addition, under subdivision (b) of section 224.2, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to section 306," the department must ask "extended family members" about the child's Indian status. "Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679.)

When the child welfare department fails to comply with its duty of inquiry under state law, we will find the error to be prejudicial and conditionally reverse if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Courts are split on whether the duty to inquire of extended family members under section 224.2, subdivision (b), is triggered if the child welfare department takes the child

6

into custody pursuant to a protective custody warrant. (E.g., *In re Robert F.* (2023) 90 Cal.App.5th 492, 500, review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 678, review granted July 26, 2023, S280572; *In re Delila D.* (2023) 93 Cal.App.5th 953, 961, review granted Sept. 27, 2023, S281447; *In re Jerry R.* (2023) 95 Cal.App.5th 388, 404.) Our Supreme Court is reviewing the issue. (*In re Ja.O.* (2023) 310 Cal.Rptr.3d 728 [2023 Cal. LEXIS 4305].)

We need not decide the issue in this case, because Lake County DSS did not seek a protective custody warrant for Alaina. Rather, it took her into temporary custody without a warrant pursuant to section 306. The agency was required to ask extended family members about the child's Indian status as part of the initial inquiry. (§§ 224.2, subd. (b), 306, subd. (a)(1), (2).) But there is no evidence that Lake County DSS or DPSS asked available extended family members about Alaina's Indian status. The juvenile court's finding that DPSS had conducted a sufficient ICWA inquiry therefore was not supported by substantial evidence. (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 566 [ICWA findings reviewed for substantial evidence].) The child welfare departments thus failed to comply with their duty of initial inquiry here.

Moreover, the ICWA inquiry error was prejudicial. DPSS had contact information for the paternal grandparents and had already spoken to the paternal grandmother about placement. And Father indicated that the paternal grandparents would have contact information for a paternal uncle. All of those individuals were readily available, and their responses would shed meaningful light on whether Alaina is an Indian child, whatever the outcome of the inquiry may be. (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 680.)

7

DPSS acknowledges that the duty to inquire of extended family members was triggered when Lake County DSS took Alaina into temporary custody under section 306. (§ 224.2, subd. (b).)  But DPSS asserts that the duty imposed by subdivision (b) of section 224.2 did not continue throughout the entire proceeding.  The agency argues that once the court removed Alaina from the parents' custody at the disposition hearing, she was no longer in DPSS's temporary custody, so subdivision (b) of section 224.2 no longer applied.

We are not persuaded.  The plain language of the statute does not support that argument.  Subdivision (b) of section 224.2 imposes the duty to inquire of extended family members "[i]f a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306."  The subdivision does not contain language limiting that duty to the period during which the child is in DPSS's temporary custody under section 306.  For instance, it does not state that the duty applies *while* or *as long as* the child is in the department's temporary custody pursuant to section 306.  The language of the subdivision describes a condition that triggers the duty to inquire of extended family members (and others), and that duty continues in the absence of language that says otherwise.

DPSS further argues that even if Lake County DSS erred by failing to inquire of extended family members, Father forfeited the issue by not appealing from the dispositional order, which incorporated a finding that DPSS had conducted a sufficient ICWA inquiry.  DPSS contends that the dispositional order is final and no longer subject to review.  That argument is meritless.  Father timely appealed from the guardianship

8

order, and that order also incorporated an ICWA finding. The issue is properly before us. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 6.)

For all of these reasons, we must conditionally reverse the guardianship order and remand for a proper ICWA inquiry.

## DISPOSITION

The order appointing a legal guardian for Alaina and terminating dependency jurisdiction is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with its duty of initial inquiry under subdivision (b) of section 224.2 and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the proper tribes (25 U.S.C. § 1912(a); § 224.3). If the court determines that ICWA does not apply, then the court shall reinstate the order appointing a legal guardian for Alaina and terminating dependency jurisdiction. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

I concur:

RAPHAEL
J.

9

[*In re Alaina W.*, E081041]

RAPHAEL, J., Concurring.

I join the opinion in full. I briefly write separately to address what I see as the central flaw in the county's central argument.

The county argues that it had a duty to inquire of the child's extended family about her Indian heritage, but that this duty attached only during the brief period that she was in the county's "temporary custody." Afterward, the argument goes, the duty dissipated.

A statute-reader who focuses on words but not context and purpose could reach this conclusion. The statute states that if a child "is placed into the temporary custody of a county welfare department pursuant to Section 306" the department "has a duty to inquire whether that child is an Indian child" including inquiring of the extended family. (Welf. & Inst. Code, § 224.2, subd. (b).) (All statutory sections cited here are to that Code.)

With the same sentence structure, a different duty could be *about* what happens in temporary custody and properly be read to end when that custody ends. For instance, a statute might state that if a child "is placed into the temporary custody of a county welfare department," the department "has a duty to provide the child with nutritious meals." The purpose there would be to ensure a child is treated well during the period of temporary custody. The duty would end when that custody ends.

But the Indian Child Welfare Act is not about what happens during temporary custody. It is about limiting and guiding the "involuntary out-of-home placement" of

1

Indian children. (§ 224, subd. (a)(1).) If a county welfare department's investigation of allegations reaches the point where a child must be removed from their home for their safety, the department takes temporary custody over the child, and that typically is when the department becomes involved in the involuntary out-of-home placement.

Thus, the expanded inquiry into whether a child is Indian is naturally read to *begin* when a child is placed into temporary custody of the department. Discovering whether the child is Indian would remain relevant throughout the dependency. (See § 224.2, subd. (a) ["affirmative and continuing duty" to ask whether a child is Indian].) The duty of inquiry has nothing to do with temporary custody itself. This is why, in my view, it would be absurd to read the language as the county does, requiring inquiry of relatives only during the temporary custody period (often just about one day).[1]

Consequently, California Rules of Court, rule 5.481(a)(1) requires the extended family inquiry whenever a county is "seeking" to place a child in out-of-home placement or to terminate parental rights. This court rule correctly applies the statutes and requires the inquiry throughout this dependency.

The opinion is entirely correct that the plain language of the statute is consistent with our conclusion. (Maj. opn., *ante*, p. 8.) The legislature did not expressly limit the

---

[1] By analogy, it would be absurd to read a sign stating "if you enter the courthouse, you must wear shoes" as meaning that visitors can remove their shoes once they cross the courthouse threshold and are in a hallway or courtroom. In contrast, it would not be absurd to read a sign stating "if you enter the courthouse, you must show your ID" as meaning that visitors need show their identification at entry, and they need not keep it visible the entire time they are in courthouse. The difference between what these statements require cannot be discerned by parsing language; only by understanding the context and purpose.

2

extended family inquiry to only the period of temporary custody.  But a duty that *did* adhere to only the period of temporary custody might use similar language for a duty about temporary custody itself.  The county might have a good point, if it were making it about a statute imposing a duty that had something do with temporary custody *as temporary custody*, rather than as the typical beginning of involuntary placement.

What ultimately answers the county is not what the words mean in isolation, but "what those words would mean in the mouth of a normal speaker of English, *using them in the circumstances in which they were used*."  (Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 417-418 (1899) [italics added].)  Our rule of court applies the statute in light of its purpose and context.  Applying and understanding this rule is important to understanding why the county's argument here does not make sense and must be rejected.

RAPHAEL     

J.

3

[*In re A.W.*, E081041]

RAMIREZ, P. J., Concurring and Dissenting.

I concur in the result.  However, I respectfully dissent, in part, from the reasoning of the majority opinion.

Welfare and Institutions Code section 224.2, subdivision (b),[1] as relevant here, provides:  "*If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 or county probation department pursuant to [s]ection 307*, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking . . . extended family members . . . whether the child is, or may be, an Indian child . . . ."  (Italics added.)

There is currently an intradistrict split of authority as to whether the italicized language *limits* the duty to inquire of extended family members to cases in which the child entered temporary custody pursuant to section 306 or 307.  (Compare *In re Delila D.* (2023) 93 Cal.App.5th 953, 970-977 [duty to inquire of extended family members applies even when child is taken into custody pursuant to a warrant], (*Delila D.*) pet. for rev. filed Aug. 22, 2023, with *In re Andres R.* (2023) 94 Cal.App.5th 828, 841-845 [duty to inquire of extended family members does not apply when child is taken into custody pursuant to a warrant]; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-680 [same], review

---

[1] All further statutory citations are to the Welfare and Institutions Code.

1

granted, July 26, 2023, S280572; *In re Robert F.* (2023) 90 Cal.App.5th 492, 497, 500-504 [same] (*Robert F.*), review granted, July 26, 2023, S279743.)

The issue is currently before the Supreme Court. Accordingly, there is no point in repeating or elaborating on the reasoning in all these cases. It suffices to say that, for the reasons stated in *Delila D.*, I conclude that *Delila D.* is the better reasoned decision, and thus that there is a duty to inquire of extended family members even when a child is not taken into custody under section 306 or 307.

I cannot sign the majority opinion, because it cites *Robert F.* as controlling, and it indicates that there is a duty of inquiry here only because the child was taken into temporary custody without a warrant pursuant to section 306. (Slip opn. at pp. 6-7.)

In my view, for purposes of this case, it is not even necessary to decide whether to follow *Robert F.* or *Delila D.* Under *Delila D.*, there is a duty to inquire of extended family members in *every* case. And the majority opinion is, of course, correct that even under *Robert F.*, there was a duty to inquire of extended family members in *this* case.

I concur that this duty was not performed. I also concur that the error was prejudicial. Thus, a conditional reversal is required.

RAMIREZ            

P. J.
